**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SANDRA SONDERLAND | : | CIVIL ACTION |
| PLAINTIFF | : | |
| | : | |
| VS. | : | CASE NO. 3:01CV1918 (SRU) |
| | : | |
| JANICE MERRIGAN, ET AL. | : | |
| DEFENDANTS | : | JUNE 16, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**I.      INTRODUCTION**

On August 14, 1998, the plaintiff Sandra Soderlund was arrested by the Meriden

Police Department and charged with Possession of Narcotics/Possession of Crack Cocaine, a

felony in violation of §21a-279(a) and a Failure to Wear a Seat Belt.  The two charges

resulted in separate files in the court system, one bearing a Motor Vehicle Docket number

and the other a Criminal Docket number.

On January 21, 2000, the plaintiff failed to appear for a Court date. On January 21,

2000, the Judge Holden issued an arrest warrant for Sandra Soderlund for a Failure to

Appear in Court. The Court, through Judge Holden, set a cash bond in the amount of $1500.

On March 9, 2000, a Notice to vacate the warrant for a Failure to Appear in the plaintiff's criminal matter was issued by the Court.  It was sent to the Meriden Police Department. Meriden Police Officer Janice Merrigan was serving as the Court liaison officer on March 10, 2000.   As part of her responsibilities as a Court liaison officer, Officer Merrigan picked up the Court paperwork on March 10, 2000 and processed it.   She stamped in the Notice to Vacate the Arrest Warrant on March 10, 2000, noted the time and initialed it.  Officer Merrigan determined that the arrest warrant for a Failure to Appear had not been entered into the Statewide computer system, and that the actual warrant was not on file at the Meriden Police Department.  As a result, she was unable to process the Notice to Vacate the arrest warrant because there was no arrest warrant in the system to vacate.  Officer Merrigan stamped the March 9, 2000 Notice to Vacate the Arrest Warrant with the notation "NOT ON FILE", noted the date and initialed the document.  She then returned the Notice to Vacate to the Meriden Court, to inform the Court that the underlying arrest warrant had not yet been delivered to the Meriden Police Department for processing.

The March 15, 2000 Notice to Vacate arrest warrant for a Failure to Appear in the Motor Vehicle case was handled in the identical manner as the March 9, 2000 notice to vacate.  It was issued by the Meriden Court and retrieved by Officer Merrigan.  She stamped it in, noted the date and time received and initialed the document.  She determined on the same date that the underlying arrest warrant for the Failure to Appear was not in the

computer system, nor on file in the Meriden Police Department.  She stamped the document with the notation "NOT ON FILE", dated and initialed the paperwork.  Officer Merrigan returned the vacate notice to Court, to inform the Court that the underlying arrest warrant had not yet been delivered to the Meriden Police Department for processing.

On Friday, May 5, 2000, the Meriden 911 dispatchers at 12:17 am entered the arrest warrant for Sandra Soderlund's failure to appear.  Despite efforts on the part of both parties, the arrest warrant has not been located.

On Saturday, January 27, 2001 Sandra Soderlund and her boyfriend celebrated her upcoming birthday by spending the afternoon at a Rib restaurant and sports bar in Cheshire, CT.  Upon leaving Damon's, Ms. Soderlund was stopped and arrested by the Cheshire Police Department based on the arrest warrant issued by the Court for a Failure to Appear.  Ms. Soderlund was picked up at the Cheshire Police Department by Officer Mroczka and another officer who is not named as a defendant, and transported to the Meriden Police Department.  Officer Mroczka processed the paperwork for Ms. Soderlund, and Officer Merrigan was called in from patrol to perform the pat down of Ms. Soderlund.  The bail amount was $1500 cash bond, an amount set by the Court and an amount that the Meriden Police Department could not change.

Ms. Soderlund was allowed to make several phone calls, to her attorney in an effort to resolve this matter, to check on her children, to get some medication delivered to the

police department for her, and to try to raise the bond money. Sandra Soderlund was unable to raise the $1500 bond. Because Sandra Soderlund was unable to raise the $1500 bond, she had to remain in the custody of the Meriden Police Department until the Court opened on Monday morning to verify her claim that the arrest warrant had been vacated.

On Sunday, January 28, 2001, Sandra Soderlund was allowed to make additional phone calls by a Meriden police officer other than the defendants. On Monday, January 29, 2001, Sandra Soderlund was brought to the Meriden Court and it was determined that the arrest warrant for failure to appear had been vacated by the Court.

When the Notices to Vacate Arrest Warrants are returned by the Liaison Officer to the Court Clerk's office, the paperwork is handed to the "Computer girl", or more properly, the "Data Terminal Operator Supervisor", Ms. Kathy Gillis. Ms. Gillis puts notices to Vacate the Arrest Warrants that are returned to the Court with the notation that the arrest warrants are "NOT ON FILE" into a folder. Once the returned paperwork is placed into the folder, Ms. Gillis does not do anything else with the notices to vacate the arrest warrants.

Despite the instructions on the Notice to Vacate the arrest warrant to "locate the original and all copies of this warrant and return them to this office [Office of the State's Attorney] immediately", there is no effort to locate the underlying arrest warrant within the Court.

4

For an arrest warrant for a Failure to Appear to be issued, a Judge orders the arrest warrant. The paperwork is prepared by the Court Clerk's office, and then held for 5 days, a grace period for the individual. After the 5 days, if the person does not appear, the personnel from the Clerk's office sign the arrest warrant. The arrest warrant is then forwarded to the State's Attorney's office for review and the signature of a prosecutor. After that, the warrant is sent to the Judge who issued it, for the Judge's review and signature. At some point, the Bail Commissioner is consulted to see if the individual who was incarcerated on the date the person was supposed to appear in Court. Finally, the arrest warrant is delivered back to the Court Clerk's office, where a copy is retained. Once the arrest warrant is signed by the Clerk's office, the prosecutor's office and the Judge, it is left in the "in-box" for the Court liaison officer from the Meriden Police Department to pick it up.

The Court liaison officer picks up the arrest warrant paperwork and returns it to the Meriden Police Department. The arrest warrant information is entered into the Statewide Computer system (for access by all police statewide) by the 911 Dispatchers during the graveyard shifts, in between calls. The 911 Dispatchers enter the arrest warrant information into the Statewide Computer system on the night that they receive it. It is the 911 Dispatchers and not the Court liaison officers who enter the arrest warrant information into the Statewide Computer system.

The use of the "NOT ON FILE" stamp is not unique to this case. Officer Mroczka continues to use the stamp "NOT ON FILE" to notify the Court if the original paperwork has not been forwarded to the Meriden Police Department as a matter of routine. The Court personnel are familiar with the "NOT ON FILE" stamp, having seen it on paperwork returned to the Court from the Meriden Police Department.

## II.     <u>ARGUMENT</u>

### A.     Summary Judgment Standard

The defendants believe that they are entitled to summary judgment on all Counts contained in the plaintiff's Fourth Amended Complaint.

Summary judgment may be granted only if "there is no genuine issue as to any material fact . . . ." Fed.R.Civ.P. 56(c ). A fact is material for these purposes if it "might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 68 (2d Cir. 2001). The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact, *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61(2d. Cir. 1995), which burden is discharged by pointing to an absence of proof on the non-movant's part. *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d. Cir. 2001). "The duty of the Court is to

determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. New York*, 72 F.3d at 1060-61.

**B.     The Plaintiff's Allegations of Mere Negligence does not give rise to a Constitutional Violation Cognizable Under § 1983, and Summary Judgment Should be Granted in Favor of the Defendants for Count One.**

A plain reading of the plaintiff's complaint clearly shows that the plaintiff is alleging negligence against the defendants. The plaintiff claims that the defendants had a statutory duty to erase a previously vacated arrest warrant from the computer system, but failed to do so. As a result of their alleged failure to erase the vacated arrest warrant, the plaintiff claims she was arrested by the Cheshire Police Department on Saturday evening and held by the Meriden Police Department until the matter could be resolved by the CT Superior Court on Monday morning.

Section 1983 does not elevate negligence to a constitutional violation. See *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2nd. Cir 1991), (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct 1078, 1084, 89 L.Ed.2d 251 (1986) ); *see also, Ella v. Jackson*, unpublished opinion 215 F.3d 1071 (2nd Cir. NY) (2000). "Plaintiffs challenging asserted deprivations of due process under 42 U.S.C. §1983 must demonstrate, *inter alia*, that the defendants acted with more than mere negligence." *Grune v. Rodriguez*, 176 F.3d 27, 33

(1999).  "The Supreme Court has since made clear that Section 1983 liability may not be premised upon negligence.  *Daniels v. Williams,* 474 U.S. 327, 330-32, 106 S.Ct. 662, 663, 88 L.Ed.2d 662  (1986)."  *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 fn5 (1991).

"It is well established that an official's negligent actions are not constitutional violations for which a plaintiff may sue under §1983." *See, Daniels v. Williams,* 474 U.S. 327, 330-32, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Medeiros v. O'Connell*, 150 F.3d 163, 170 (2d Cir. 1998).

In *Berg v. County of Allegheny*, 219 F.3d 261 (3rd Cir. 2000), the Third Circuit considered a factually similar situation in which the plaintiff brought an action sounding in civil rights violation under 42 USC § 1983, 1985(3), 1988(1994), and the Fourth, Fifth, and Fourteenth Amendments, alleging false arrest and imprisonment based on an erroneously issued warrant. Plaintiff Raymond Berg sued the County of Allegheny; Richard Gardner, the supervisor at Allegheny County Adult Probation Services, who requested an arrest warrant for a Paul Banks; ***Virginia Demko, the warrant clerk responsible for issuing and clearing all arrest warrants for Allegheny County and who accidentally transposed two digits and entered an arrest warrant request for the plaintiff Raymond Berg instead of Paul Banks***; and Constable Glen Allen Wolfgang, an elected constable who served the arrest warrant. Summary judgment was affirmed for the defendants Gardner and Demko, the warrant clerk. The Court found that the plaintiff "has not alleged anything more than mere negligence on Demko's part.  Negligence by public officials is not actionable as a due process violation." *Berg v. County of Allegheny*, 219 F.3d 261, 274 (3rd Cir. 2000).

The defendants, as liaison officers, are in the identical position as that of Ms. Demko, the warrant clerk.  According to the complaint, they failed to enter information into a statewide computer system to vacate an outstanding warrant of the plaintiffs.  The evidence shows that Officer Mroczka did not become the Court liaison officer until after the incident in question, and summary judgment should be granted in his favor for that reason alone.

Furthermore, the evidence shows that Officer Merrigan did not fail to enter the vacate notices, but that she returned the vacate notices to the Court when she determined that the arrest warrant had not been sent over by the Court yet.  It was the Court that subsequently sent the arrest warrant for a failure to appear 3 months later, even though the Court had the Notice to vacate in their possession.   Because it was the action or inaction of the Court and not of the defendants that caused Ms. Soderlund's arrest warrant to be forwarded to the Meriden Police Department for entry into the Statewide computer system, summary judgment in favor of Officer Merrigan is appropriate.

Because the plaintiff has only pleaded negligence against the defendants in the First Count that attempts to bring a claim of a violation of her constitutional right under 42 USC § 1983, summary judgment should enter in favor of the defendants.  The facts as alleged by the plaintiff do not rise to a constitutional law violation, nor do the facts as set forth above

and in the defendants' Rule 9(c)1 statement show that the acts of the defendants amount to negligence. Summary judgment is appropriate for both defendant police officers.

**C.      The Defendants are Entitled to Summary Judgment in Count Two of the Complaint because the Plaintiff Has Failed to Establish a Violation of Substantive Due Process.**

The plaintiff attempts to make a claim of a violation of substantive due process in Count Two of her Complaint, alleging that the actions of the defendant police officers, in participating in the detention of the plaintiff yet allegedly having knowledge that the arrest warrant had been vacated, amounts to extreme and outrageous conduct. Summary judgment should be granted in favor of the defendants in Count Two of the Complaint as there is nothing in the plaintiff's allegations that rise to the level needed to find a violation of the plaintiff's Fourteenth Amendment right of substantive due process. While the defendant police officers were on duty the evening that Ms. Soderlund was brought to the Meriden Police Department, so were a number of other officers. That fact alone is insufficient to establish a constitutional violation. Furthermore, the plaintiff has offered no proof that the defendants had any particular knowledge that the Court vacated her arrest warrant. The facts fail to meet the high threshold of a violation of substantive due process, and summary judgment is appropriate for Count Two.

"As a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process, because guideposts for responsible decision-making in this uncharted area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). The doctrine of judicial self-restraint requires courts to exercise the utmost care whenever they are asked to break new ground in the field of substantive due process. *Id.*

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against government action that incorrect or ill-advised." *Kaluczy v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can be fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Central School District*, 298 F.3d 168, 173 (2d Cir. 2000). "The acts must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity." *Johnson v. Glick*, 481 F.2d 1028, 1033 n .6 (2d. Cir). "Malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 252 (2d. Cir. 2001).

While the plaintiff's complaint is full of conclusory characterizations, the allegations in the complaint as well as facts in the 9(c)1 statement fail to demonstrate that the defendants behaved so outrageously as to shock the conscience. There are no allegations of brutality, there are no sadistic acts. The facts in this matter simply do not rise to outrageous, sadistic and brutal conduct that shocks the conscience. See, *Barton v. Bristol*, 2003 WL 22869265, *7, Docket 3:02 CV 1210 PCD (Dorsey, J).

On January 27, 2001, the date of Ms. Soderlund's arrest, the Statewide Computer system showed that the plaintiff had an outstanding arrest warrant for a Failure to Appear in Court. Officer Mroczka relied on the information in the computer system and the information in the warrant to detain Ms. Soderlund. Ms. Soderlund's contention that the arrest warrant had been vacated could not be confirmed by anyone until the Court opened for business on Monday, January 29, 2001. Officer Mroczka processed Ms. Soderlund's paperwork and because Ms. Soderlund did not post the $1500 bond as set by the Court, she was required to remain in the custody of the Meriden Police Department until Monday morning. Officer Merrigan was called in from patrol and performed a "pat-down" and search of Ms. Soderlund, and then resumed patrol.

As set forth in the statement of fact and above, the notices to vacate Soderlund's arrest warrants were delivered to the Meriden Police Department on March, 9, 2000 and March 15, 2000, both of which were promptly returned to Court, since the arrest warrant

was not on file with the Meriden Police Department, nor was it in the Statewide Computer system. Despite having the created the notices to Vacate the Arrest, and having been informed that the arrest warrant was not on file at the Meriden Police Department, the Court issued Soderlund's arrest warrant and delivered it to the Meriden Police Department 3 months later, and it was entered into the Statewide Computer system.

Nothing that the defendants did, either in the capacity of Court liaison officer or as officers on duty when Ms. Soderlund was brought into the Meriden Police Department, amounts to a violation of substantive due process, and the defendants' motion for summary judgment as to Count Two of the complaint should be granted.

**D.      The Defendants Are Entitled To Qualified Immunity in Counts One, Two and Three.**

Counts One, Two and Three are directed at the individual police officers.  While Counts One and Two purportedly claim violations of constitutional law, while Count Three is a claim that sounds in negligence.   Because the actions of the defendants are cloaked in qualified immunity, summary judgment is appropriate for all Three Counts.

As the Second Circuit has explained, "the qualified immunity or 'good faith' immunity enjoyed by police officers shields them from personal liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818

(1982) . . .  or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, see *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)."  *Golino*, 950 F.2d at 870

A government actor's conduct will be considered 'objectively reasonable' if 'officers of reasonable competence could disagree' on the legality of the government actor's conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The issue of qualified immunity is properly decided at summary judgment when "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all the reasonable inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a clearly established federally protected right." *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). The immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial.  *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (NY 1999).

"Normally, the issuance of a warrant by a neutral magistrate, which depends upon the finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."  *Golino*, 950 F.2d at 870.

As a general rule, police officers are entitled to qualified immunity, and are not subject to personal liability for civil damages, if their conduct does not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Hayter v. City of Mount Vernon*, 154 F. 3d 269, 274 (5th Cir. 1998) (employing a two step analysis for determining whether police are entitled to qualified immunity: whether the plaintiff alleged a violation of a clearly established constitutional right and whether the conduct of the police was objectively reasonable). Qualified immunity protects government officials performing their duties from the burdens of trial and the threat of monetary liability. See, *Harlow*, 457 US at 818. "Without such immunity, the operations of government would be immobilized." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Thus, a government official surrenders this immunity only when a reasonable official would have known that the action violated clearly established constitutional rights. See, *Harlow*, 457 US at 818.

Neither officers' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known, and the defendant officers should enjoy the protections of qualified immunity.

Officer Mroczka cannot be held liable as a Court liaison officer because the facts show that he did not become a Court liaison officer until after the dates in question. As the officer

who processed the plaintiff on a Saturday evening, he was unable to verify her contention that the arrest warrant that was on the Statewide Computer system had been in fact vacated by the Court until the Court opened on Monday morning.  Because the arrest warrant had a bond in the amount of $1500 cash bond set by the Court, Officer Mroczka was unable to release the plaintiff unless and until she paid the bond.  The plaintiff would not or could not pay the bond, and as a result, remained confined in the Meriden Police Department until Monday morning.  Nothing Officer Mroczka did or did not do while Ms. Soderlund was in custody could be considered a constitutional violation, or even simple negligence, and he is entitled to summary judgment based on qualified immunity.

Generally, defendants may only be held liable for damages under 42 USC § 1983 when they have "personal involvement in the alleged constitutional deprivations." *Williams v. Smith*, 781 F.2d 319, 323 (2d. Cir. 1986).  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d. Cir. 1994).  Personal involvement includes direct participation, but only if the defendant was aware or had notice of the facts that rendered the action illegal.  *See, Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d. Cir. 2001).

In *Murvin v. Jennings*, 259 F.Supp.2d 180 (D.Conn. 2003, Nevas, J), an arrestee brought a § 1983 action against the town, various police detectives, and other officers, including the Court liaison officer alleging unlawful arrest, prosecution and imprisonment.  The Court,

Nevas, J. granted summary judgment in favor of various police officers, including the Court Liaison officer, on the grounds of qualified immunity because there was no personal involvement:

"Court liaison Officer Therina's involvement is limited to picking up the information that the Detective put into the 'court bin' and delivering it. There is no allegation or evidence that Officer Therina participated in or had a knowledge of Weaver's recantation, spoke to Detective Jennings about Weaver's statements, or read either statements. There is no evidence that he participated in any of the investigation. Officer Therina's knowledge and degree of involvement are insufficient as a matter of law to hold him personally liable in this case." *Murvin v. Jennings,* 259 F.Supp.2d 180, 191 (D. Conn. 2003).

To the extent that the plaintiff has brought this action against Officer Merrigan in her capacity as a Court liaison officer, the plaintiff has failed to produce any evidence that would render Officer Merrigan liable, and she is entitled to qualified immunity. It was the Court who failed to locate and destroy the warrant for Ms. Soderlund's arrest, even after the Meriden Police returned the vacate notices to the Court, indicating that the Police Department did not have the warrant on file. Officer Merrigan's actions as the female officer performing a "pat down" or search of Ms. Soderlund when she was being held by the Meriden Police Department clearly was not in violation of Ms. Soderlund's constitutional rights.

For the reasons set forth above, the defendants are entitled to the protections of qualified immunity for Counts One, Two and Three, and judgment should enter in their favor.

**E.     The City of Meriden is Entitled to Summary Judgment in Count Four Because the Plaintiff has No Evidence to Support her Claims of a Failure to Train and Supervise the Court Liaison Officers.**

In Count Four of the Complaint, the plaintiff claims that the City of Meriden has a "custom and practice" to have "no training or supervision or procedure to follow up on vacated arrest warrants being removed from the Meriden police records or to determine if vacated arrest warrants were properly erased from the Statewide Computer files or to prevent the disclosure of erased records, or to determine that records were properly erased." (Count 4, ¶16).    However, the facts show that the defendant Officer Merrigan had been trained, both by her predecessor in the responsibilities of the position as Court Liaison officer as well as by the State of Connecticut on the computer processing.  Furthermore, it was a failure by the Court to locate and destroy Ms. Soderlund's arrest warrant after being the Court had issued a Notice to Vacate the arrest warrant that resulted in Ms. Soderlund's arrest and confinement in the Meriden Police Department.  Summary judgment is appropriate in Count 4.

A municipality may not be sued for an injury afflicted solely by its employees or agents.  It is well settled that a municipality may not be held liable under 42 USC §1983

solely on a respondeat superior basis.  It may be held liable when the complained of actions

are the result of the government's policy or custom.  *Monell v. Department of Social*

*Services*, 436 U.S. 658, 694 (1978).

The plaintiff alleges that inadequate training or supervision or procedure existed in

the City of Meriden Police Department so as to constitute a policy within the department,

and that said policy caused the confinement of Sandra Soderlund.  However, there is no

evidence that there is a failure to train, nor is there any evidence that there is a deliberate or

conscious choice on the part of the City of Meriden to not train its officers.  "Only where a

failure to train reflects a deliberate or conscious choice by the municipality can the failure be

properly thought of as an actionable city policy."  *City of Canton, Ohio v. Harris*, 489 U.S.

378, 389 (1989).

"The plaintiff here must demonstrate either that the actions of the various individual

defendants resulted from the official written policy of the government regarding dispatching

procedures or that such actions were widely accepted and constituted the known custom of

the City.  It is axiomatic that the lack of a policy cannot constitute a policy.  The plaintiff

also fails to submit any evidence that the shortfalls complained of were customary . . . .

Even if the plaintiff had proven the existence of a municipal policy, the plaintiff must also

prove that the actions of the municipality amounted to constitutional violations."  *Aselton v.*

*Town of East Hartford*, 2002 WL 31875443, at *8 (Memorandum of Decision on

Defendants' Motion for Summary Judgment, CT Superior Court, Complex Litigation, December 3, 2002, Sferrazza, J.)

Given the standards set forth in *Aselton*, above, it is clear that the plaintiff's claims of liability for a failure to train and supervise must fail. To the contrary, the defendant has provided copies of her training and certification on the Statewide Computer system, as well as testimony that her predecessor trained her. There is no evidence that there is a policy or custom of not vacating arrest warrants when the vacate notices are received and there is an arrest warrant in the Statewide computer system. The facts have shown that in this matter the Court liaison officer returned the notices to vacate the arrest warrant to Court because the arrest warrant was not in the possession of the Meriden Police Department, and it was the Court that sent over the arrest warrant months later to be entered into the Statewide Computer system. There is no evidence of a Citywide custom or policy as alleged by the plaintiff that caused her confinement. Summary judgment is appropriate in Count Four in favor of the City of Meriden.

**F.      The City of Meriden Enjoys Governmental Immunity From Claims of "Failure to Train and Supervise", and Summary Judgment is Appropriate for Count Four.**

Count Four of the plaintiff's Fourth Amended Complaint alleges that the City of Meriden had a custom or policy of failing to train and supervise the defendants  (Complaint,

Fourth Count, paragraph 16). The City of Meriden is immune from liability for the

performance of governmental acts, and summary judgment is appropriate.

> Extensive and near unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in the plaintiff's complaint– the failure to . . . train [and] supervise . . . are discretionary acts as a matter of law." *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 179 (1988) (noting that the operation of a police department, is a discretionary, governmental function); . . . *Hubbard v. City of New Britain,* 1996 WL 66238 (Ct. Super.) (Granting motion to strike complaint alleging negligent training of police officer in high speed chases because such action is clearly discretionary and protected by governmental immunity); *Doe v. Nunes*, 1995 WL 137143 (Ct. Super.) (Granting motion to strike complaint alleging negligent hiring, supervising and firing of officer because such actions are discretionary duties protected by governmental immunity); *Coletosh v. City of Hartford,* 1999 WL 259656 (Conn. Super) (in a case alleging excessive force on the part of Hartford police officers-- instructing, supervising, controlling and disciplining police officers were discretionary acts); *Cook v. City of Hartford*, 7 Conn.L.Rptr. 270, 1992 WL 220102 (1992) ("The act of training and supervising police officers is clearly a discretionary governmental function. Consideration of who to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgement and discretion. A municipality cannot employ a standard list of action which must be taken in utilizing its police department.").

*Hughes v. City of Hartford*, 96 F.Supp.2d 114, 119-120 (D.Conn. 2000) (Arterton, J) (Ruling on Defendants' Motion to Dismiss). In *Hughes,* Judge Arterton concludes that the acts of screening, hiring, training, controlling, disciplining and supervising police officials are discretionary in nature, and dismissed plaintiff's claims against the City of Hartford, because the City enjoys governmental immunity.

In Count Four, summary judgment should enter in favor of the City of Meriden. The plaintiff has made a claim that the City of Meriden failed to train or supervise the defendants. Caselaw clearly holds that, especially in matters involving the Police, training and supervision are governmental acts and the municipality is entitled to governmental immunity.

Furthermore, the evidence has shown that the Officer Merrigan was trained and received periodic recertification on the computer system in question. It is the 911 dispatchers, not the defendants, who enter the arrest warrant information as a matter of routine. The evidence shows that when the notices to vacate the arrest warrants came over to the Meriden Police Department, the arrest warrant was not entered into the computer system. The vacate notices were promptly returned to the Court, with the notation that the underlying arrest warrants were "NOT ON FILE".

The facts as alleged by the plaintiff allow for summary judgment to enter in favor of the City of Meriden on the basis of governmental immunity. The facts as determined through discovery all the more clearly show that there is no liability on the part of any of the defendants.

**G.      Summary Judgment Should be Rendered in Favor of the City of Meriden in Count Five Because the Plaintiff has Failed to Make the Requisite Affirmative Allegations to Plead Under Conn. Gen. Stat. §7-465.**

In Count 5 of the Complaint, the plaintiff brings a pendent state law claim for indemnification brought pursuant to C.G.S. §7-465 as against the City of Meriden, for the "violation of her civil rights and for the carelessness and negligence of the individual police officers" (Complaint, paragraph 19).   However, in order to impose statutory liability on the defendant municipality, Section 7-465 requires the plaintiff to "affirmatively allege" that the conduct of the defendants was not willful, wanton or malicious.  *Wilson v. City of Hartford*, 1998 WL 229819 (D.Conn.) (Thompson, J.) (Ruling on Motions to Dismiss and Motion to Strike)(March 24, 1998).   The Plaintiff's complaint fails to do that, and summary judgment is appropriate.

"To maintain a claim under Section 7-465, the plaintiff ***must affirmatively plead and*** eventually prove that her injuries were not the result of the municipal employee's willful or wanton act. . . .  Simply put*,* the plaintiff has not specifically plead that the conduct of [the defendants] was not undertaken in a willful, wanton, or malicious manner."  *Gillespie v. Ancona*, 1999 WL 66538 (D.Conn.) (Burns, Senior J.) (Ruling on Motion to Dismiss)(Feb. 4, 1999) (citations omitted) (emphasis added)

Section 7-465 is "designed to change the common-law immunity accorded to a municipality for the ***negligence*** of its employees."  *Bombriant v. City of New Haven,* 25 Conn. Supp. 339 (Conn. Super. Ct. 1964) (emphasis added).   "Hence, Section 7-465 permits a claim against a municipality to indemnify its employees if the alleged injuries

sustained by the plaintiff were ***NOT*** caused by willful, wanton or malicious acts of the employees; Section 7-465 does not permit a claim for indemnification if the alleged injuries were caused by willful, wanton and malicious acts." *Wilson v. City of Hartford*, 1998 WL 229819 (1998) (emphasis added), *quoting, Karbowicz v. Boroush of Naugatuck,* 921 F. Supp. 77, 78 (D.Conn. 1995); *Orticelli v. Powers*, 197 Conn. 9, 495 A.2d 1023, 1026 (1985); *Carretta v. Town of Greenwich*, 1993 WL 128208 at 1 (Conn. Super.,  April 14, 1993).

A review of Count 5 reveals that the plaintiff has not made the necessary allegations that the conduct of the defendant police officers was not willful, wanton, or malicious.  As such, the plaintiff has failed to state a cause of action against the City of Meriden, and summary judgment should enter in the City's favor

### I.     The Court Should Decline to Retain the State Law Claims

Given that Counts 3 and 5 are state law claims, it is respectfully requested that should the court grant the Defendants' Motion for summary judgment on the constitutional law claims, yet deny the summary judgment motions on the state law claims, that the Court decline to exercise jurisdiction over the remaining counts sounding in State law and common law.

### <u>CONCLUSION</u>

For the foregoing reasons, the Defendants request that summary judgment be entered in favor of the defendants on all counts of the Plaintiff's complaint.


THE DEFENDANTS
JANICE MERRIGAN
JAMES MROCZKA
CITY OF MERIDEN


By:_____/S/
    Deborah L. Moore
    Their Attorney
    City of Meriden Legal Department
    City Hall
    142 East Main Street
    Meriden, CT  06450
    Tel (203) 630-4045
    Fax (203) 630-7907
    Email dmoore@ci.meriden.ct.us
    Fed.Bar Id ct17792


## **CERTIFICATION**

This is to certify that on the 16th of June, 2004, a copy of the foregoing was mailed, postage prepaid, to the following:

**Bruce Chaplin, Esq.,** 208 Main Street, Durham, CT 06422

_____/S/____
Deborah L. Moore