UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA SODERLUND ) | |
|     Plaintiff ) | CIVIL ACTION NO. |
| ) | |
| V.S. ) | 301-CV-1918(SRU) |
| ) | |
| JANICE MERRIGAN, JAMES MROCZKA, ) | |
| OFFICERS IN THE POLICE DEPT OF THE ) | |
| CITY OF MERIDEN ) | |
| THE CITY OF MERIDEN ) | |
|     Defendant(s) ) | AUGUST 26, 2004 |

## BRIEF IN SUPPORT OF OBJECTION
## TO MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

A Rule 56 Motion for Summary Judgment should only be granted if the court determines that as a matter of law there are no genuine issues of material fact. Fed. R. Civ. P. Rule 56(c); Anderson v. Liberty Lobby Inc. 477 U.S. 242, 256 (1986). As stated in Anderson it is the substantive law governing a particular case that identifies facts that are material. Anderson supra 477 U.S. at 258. A court should grant Summary Judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact..." Miner v. Glenfalls 999 F2d 655, 661 (2d Cir. 1993). In this case not only can reasonable minds differ as to the facts, there is no one other than the liaison officers of the Meriden Police Department that could have stopped this Fourth Amendment violation from occurring. Only the municipal police department was in a position to

1

correct the potential Fourteenth Amendment violation and could have stopped this from happening. (Depo Merrigan p. 23, 41, 47)

It is the Meriden Police Department and its liaison officer who control and direct the information regarding arrest warrants for Failure to Appear. (Depo G. Duggan p. 15, 33; Gillis p. 23; Germain p. 18-19; Exhibit A).

It is the liaison officer that is directed by Conn. Gen. Stat. §54-142a(a) charged with erasing said warrant from their records. It reads in pertinent part: The notice of the vacated arrest warrant was delivered to the Meriden liaison officer with the warning to "please locate the original and all copies of this warrant and return them to this office immediately" and further given notice that "execution of this warrant after receipt of this notice may result in claims for money damages against the State of Connecticut and liability for civil money damages imposed against your agency on behalf of this defendant." (Ex. F; C.G.S. §54-142a).

The clerks in the Court House and the State's Attorney office have all testified that a warrant for Failure to Appear is delivered to the police department five days after it is ordered by a judge. (Depo Duggan p. 12-15 17, 31; Germain p. 20; Gillis p. 23). The clerk's office has testified that a notice to vacate the arrest warrant is prepared and delivered to the police department within one day after it is ordered by the judge. (Depo Gillis p. 11-14, 24, 26-27; Duggan p. 33). Merrigan has admitted that it was the responsibility of the court liaison officer to pick up court paperwork and process it. (Defendant Local Rule 9(c)1 para. 9). There is no one else but the liaison officers to direct the 911 dispatcher to enter an arrest warrant for Failure to Appear into the statewide computer. (Local Rule 9(c)1 para. 11). The clerks of the Court and the State's Attorney office have testified that the Failure to Appear warrant would have been

2

delivered to the police department within two weeks after January 21, 2000. (Depo Gillis p. 23; Merrigan p. 28-29; Germain p. 20)

The liaison officers knew that other police departments would rely upon the information in the statewide computer and legally could rely upon the information in the statewide computer and rely on what they were told by Meriden. Outlaw v. City of Meriden 43 Conn. App. 387, 391 (1996); Whitten v. Bennett 86 F 405, 406 (2d Cir. 1898); United States v. Cancelmo 64 F3d 804 (2d Cir. 1995). The liaison officers should have found this warrant and removed it from the police department records; they should have removed the record from the statewide computer; they should have made sure that it was not entered into the statewide computer by the clerk/dispatch officer.

The Cheshire police officer determined from the computer that there was an outstanding arrest warrant for Failure to Appear. This warrant was confirmed with the Meriden Police Department over the telephone and Sandra Soderlund was held for the Meriden Police Department for pick up (Ex. A and O). No one but the liaison officer could have stopped this from happening.

The warrant was vacated by the Court upon motion made by the plaintiff on March 8, 2000 (Ex. R)

It was apparently not Meriden practice or procedure to save the Notice to Vacate nor to save it in the same file as the warrant. Officer Merrigan knew that a Notice to Vacate had been issued, yet she did not say anything and did not straighten the matter out when the plaintiff was brought to the Meriden Police Department and held for two days until she was released by the State's Attorney office. (Ex. A, H. O, Merrigan Depo).

3

The clerk's office states that the only time a Notice to Vacate could be delivered to the liaison officer prior to the warrant was during the five-day grace period. (Depo Gillis p. 23; Duggan p. 17, 31; Germain p. 20). The clerk's office further states that a warrant for Failure to Appear has never been delivered to the police department after that warrant has been vacated (Depo Gillis p. 34-35). This makes absolute sense knowing the procedure at the clerk's office. All warrants are kept in separate place awaiting the five-day grace period and signed by two clerks, a prosecutor and a judge. (Depo Gillis p. 13, 23; Duggan p. 12-15, 31)).

Even Merrigan admits that a copy of the warrant is retained by the police department in their "case file in our jacket of the case reports." (Depo Merrigan p. 23, 52.) As for the Notice to Vacate, it was produced by the police department from their files. (Def. Ex. 9). Note that when Cheshire called Meriden during the weekend, the dispatcher called the desk supervisor who "physically got the warrant", the hard copy. (Ex. A; Merrigan depo p. 37-38).

So where was the Notice to Vacate that should have been in the file? The answer is either (1) Merrigan never checked the file on March 9 or March 13  (2) Merigan had misplaced the warrant (3) the Notice to Vacate was not copied and saved in the file (4) the police department filed the warrant and the Notice to Vacate in different places, knowing that warrants and notices sometimes cross "in the delivery" during the five-day grace period; and  (5) there is no procedure in the police department for connecting warrants and notices.

The result is unreasonable under a Fourth Amendment analysis. The result is deliberate indifference under a due process analysis; indifference on the part of the liaison officer who did not make the effort to look for the warrant or indifference on the part of the liaison officer in not looking for the notice to vacate or indifference on the part of the department in not making sure

4

that there was a procedure to keep the warrant and the notice in the same file. Indifference in believing that this problem could exist but not doing something to correct it. (Depo Merrigan p. 25, 49, 52)

    **A.**    The liaison officers are town police officers who caused a violation of the plaintiff's Fourth Amendment rights.

The first step in any deprivation of rights case under 42 U.S.C. §1983 is to identify the specific constitutional right infringed. Graham v. Connor 490 U.S. 386, 394 (1989). The validity of the claim is then judged be reference to the specific standard which governs that right. Albright v. Oliver 510 U.S. 266 (1994). The Fourth Amendment guarantees the right "to be secure...against unreasonable searches and seizures..."

"A plaintiff asserting a Fourth Amendment...claim under §1983 must therefore show some deprivation of liberty consistent with the concept of [an unreasonable] seizure." Singer v. Fulton County Sherif 63 F3d 110, 116 (2d Cir. 1995). "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest." Singer v. Fulton County Sherif 63 F3d at 117.

A violation of the Fourth Amendment requires an intentional acquisition of physical control directed at the plaintiff herself. Medeiros v. O'Connell 150 F3d 164 (1998) citing Brower v. County of Inyo 489 U.S. 593, 596, 109 S.Ct. 1378, 1381 (1989).

The liaison officers knew that all other police officers could and would rely upon the warrant. Outlaw v. City of Meriden 43 Conn. App. 387, 391 (1996); LoSacco v. Young 20 Conn. App. 619 (1989); United States v. Cancelmo 64 F3d 804 (2d Cir. 1995). At the time of the arrest, the liaison officer Merrigan was present and knew the arrest warrant had been vacated.

5

Officer Mroczka was the arresting officer. (Depo Merrigan p. 16, 23, 40; Ex. O; Local 9(c) 1 para 12).

Knowing this the liaison officer caused the acquisition of physical control over the plaintiff as follows: (1) by not removing said arrest warrant from their records, (2) by disseminating the arrest warrant information to other police departments, (3) by disseminating the arrest warrant information knowing that the arrest warrant had been vacated, (4) by causing a vacated arrest warrant to be disseminated to the Cheshire Police Department, (5) by causing the plaintiff to remain in the custody of the Meriden Police Department after being transported from Cheshire.

The defendant admits that there was no valid warrant.

Apparently the liaison officer is claiming that this is only negligence. However, a Fourth Amendment claim is based upon the reasonableness of the seizure. That claim ignores the fact that Merigan knew about the Notice to Vacate. (Depo Merrigan p. 17-18; Gillis p. 34-35; Def. Ex. 9). Also Connecticut law directs that the warrant information be erased. C.G.S. §54-142a. Further she knew that all other police officers including Meriden police officers could rely upon her actions as stated above.

What she knew, which is a question of fact in of itself, is that "a warrant issued on January 21, 2000. She normally received that warrant about two weeks later." (Merrigan depo p. 29). She would then process that warrant, put a copy in the police file and give a copy to the 911 dispatch officer. (Merrigan depo p. 9, 21-22).

The question to be asked and the issue involved for Fourth Amendment purposes is: was it reasonable to have an arrest warrant in their police files and on the computer?

6

Notices to Vacate always come to the police the day after they were ordered by the judge. If the Notice to Vacate were given to her before the warrant left the clerk's office, the warrant would never have left the clerk's office. (Duggan depo p.36-39; Germain p. 13, 20; Gillis p.34-35). If the Notice to Vacate were given to her after the five days, she should return the warrant to the court and cancel the NCIC computer. (Merrigan depo p. 16, 23, 40). She claims she received an arrest warrant over four months after January 21, 2000.

Her claim is that the State's Attorney office gave her a warrant that was over four months old, where a Notice to Vacate had already been ordered. However, she admits that the police had the Notice to Vacate in their files. (Merrigan depo p. 23; Def. Ex. 9).

The liaison officer's actions were unreasonable under any applicable facts because she did not follow Connecticut law in erasing the plaintiff's name from the statewide computer, or in removing this warrant from the Meriden police files, or in locating the Notice to Vacate that was in the Meriden police files or in allowing the warrant information to be disseminated to the Cheshire police, or in failing to look for the Notice to Vacate when Sandra Soderlund was arrested. Graham v. O'Connor 490 U.S. 386, 396-397 (1989).

The Cheshire Police Department, in addition to looking at the computer, called the Meriden Police Department to confirm that there was an outstanding warrant. The Meriden Police Department, relying upon the information that was not removed by the liaison officer, confirmed that there was an outstanding warrant. The defendant's actions were unreasonable under any applicable standard. She knew the failure to remove the warrant would result in the plaintiff's eventual arrest. Malley v. Briggs 475 U.S. 335, 344-345 (1986). Furthermore, the hard copy of the warrant was available to the police. The hard copy of the Notice to Vacate should have been

7

available too. She failed to make this available.

The two cases cited by the defendant, namely <u>Berg v. County of Allegheny</u> 219 F3d 261 (3d Cir. 2000) and <u>Mervin v. Jennings</u> 259 F. Sup. 2d 180 actually help the plaintiff's case. The clerk in <u>Berg</u> is more akin to the 911 dispatch officer. As for <u>Mervin</u> the liaison officer here is more akin to Det. Jennings or Det. Pinto. The liaison officer here has certain responsibilities and is not just a person who carries information back and forth between the court and the police department.

It is a question of fact: (1) where was the hard copy of the Notice to Vacate after March 10, 2000 (2) did Merigan check the file for the warrant on March 9 or March 13, 2000 (3) did Merigan misplace the warrant (4) was a copy of the Notice to Vacate placed in the police files (5) should she have remembered Soderlund when Soderlund was arrested the following January on the vacated warrant (6) should she have looked for the hard copy of the Notice to Vacate (apparently this notice was somewhere in the police files as they produced it after this case started) (7) was the Notice to Vacate with the quotation "not on file" ever even delivered to the clerk's office (Gerri Duggan denies that she ever saw that document and it was not produced at any time by the clerk's office. (Ex. C, D). (8) was the warrant for Failure to Appear delivered to her prior to March 2000.

**B.**     Substantive Due Process.

There is evidence that the liaison officer and arresting officer failed to act to protect the plaintiff from being held in jail for two days. The defendant liaison officer has offered the <u>unlikely</u> scenario that the State's Attorney office delivered the invalid warrant in May 2000; that the police had no reasonable duty to look for the Notice to Vacate (either to look for it at the time the

warrant was delivered or to look for it at the time of plaintiff's arrest). The claim appears to be that the police may rely upon a warrant sent to them by the Court no matter what the underlying circumstances.

The plaintiff in turn makes this claim alleging that if the seizure itself is not the issue, then the defendant's omission in failing to prevent the seizure or in continuing the seizure is the issue. County of Sacramento v. Lewis 523 U.S. 833 (1998). This case involves much more that mere negligence. The Due Process clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government. Daniels v. Williams 474 U.S. 327, 330 (1986) citing Hurtado v. California 110 U.S. 516, 527 (1884).

Defendant Merrigan states that warrants for Failure to Appear have in the past been delivered after the Notice to Vacate. (Merrigan depo p. 25, 49, 52). The Court disagrees that this ever happened.

Knowing this the liaison officer should only have to look in the "case file jacket of the case reports" for the Notice to Vacate. (Merrigan depo p. 23 line 12-15 p. 52 line 3-4). Merrigan has produced Notices from the police records. (Def. Ex. 9). However, it appears that the Notice to Vacate was not stored in the same place as the warrant.

It is the plaintiff's contention this was deliberate indifference to fail to keep the notice in the case file or to look for a notice every time a warrant for Failure to Appear is delivered to the police. Especially in this case where the date of the warrant is January 21, 2000 and Merigan claims she received it in May 2000.

Merigan first testified at her deposition that she does look at the date of the warrant. (Merigan depo p. 27.) Then, after prompting by her lawyer, she stated that she only looks at the

9

signatures on the warrant. It is deliberate indifference not to look at the date of the warrant. It is deliberate indifference to see the date of January 21 and deliver the warrant to the 911 officer, knowing what she knew.

The police and the liaison officer in particular, should not be able to escape liability claiming in that they relied upon a warrant they received from the court. That alone creates a question of fact. In this analysis, the issue is that the police had notice of the vacated warrant and failed to look for the Notice to Vacate or failed to look at the date that the warrant was issued or failed to have any procedure to prevent this believing there was a problem.

This case is not a pillow left on stairs (Daniels) or a high speed chase (Sacramento v. Lewis) This is a case where seizure is likely and there is time to contemplate.

This is a case where the police know that other police in the future will and can legally rely upon the warrant information. Outlaw v. City of Meriden 43 Conn. App. At 391; United States v. Cancelmo 64 F3d 804 (2d Cir. 1995).

The failure to act here may be a question of fact. If the jury finds that there was a failure to act, it is the interest implicated that shocks the conscience.

**C.**   The City of Meriden has deprived the plaintiff of her substitive due process right to be free from incarceration.

The claims in Count Four are made in the alternative to the claims made in Count One. The plaintiff understands that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notice of substitive due process, must be the guide for analyzing these claims. Albright v. Oliver 510 U.S. 266 citing Graham v. Connor 490 U.S. 386, 395 (1989).

However, Officer Merrigan has defended on the grounds that the warrant for Failure to Appear was delivered to her on or about May 5, 2000. Although the defendant's claims are impossible based upon the testimony of the clerk's office and the State's Attorney office (Depo Duggan p. 36-39; Germain p. 13 and 20; Gillis p. 34-35), the City should not be able to escape liability in the unlikely event that the court believes this scenario.

The policy alleged here is the failure to have a procedure to follow up on vacated arrest warrants being properly removed from the Meriden Police records; or the failure to have a procedure to determine if vacated arrest warrants were erased from the statewide computer; or the failure to have a procedure to prevent the disclosure of erased records as is required by statute; or to have a procedure to erase records where an arrest warrant does come to the police department after the notice to vacate has been delivered.

In order to make a claim for municipal liability, the plaintiff must prove that, "the failure to train [or to implement a procedure] amounts to "deliberate indifference to the rights of those with whom the police officials will come into contact." Canton v. Harris 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989). The Canton case implements the Supreme Court ruling in Monell v. New York City Dept. of Social Servs. 436 U.S. 658 (1978).

This Circuit and others have come up with a three- part test to support such a claim: (1) that a policy maker of the municipality knows to a moral certainty that its employees will confront a given situation: (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult [or the failure to have such a procedure will make the decision less difficult] or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employees will frequently cause the deprivation of

11

a citizen's constitutional rights <u>Young v. Fulton County</u> 106 F3d 902 (2d Cir. 1998) citing <u>Walker v. City of New York</u> 974 F2d 293 (2d Cir. 1992).

The policy makers here knew to a moral certainty people could be arrested if warrants were not properly removed from the statewide computer or if warrants were not removed from the police records. They knew to a moral certainty that Connecticut law required the erasure of vacated warrants and that other police departments would rely upon the dissemination of a vacated warrant and believe in good faith that that warrant was valid.

The policy makers believed that warrants for failure to appear might arrive at the police station after the notice to vacate. (Merrigan depo p. 23-25, 49-52). The difficult choice for a police officer is what to do with the Notice to Vacant where the notice states that the arrest warrant was issued on January 21, a month and a half prior to the date of the Notice to Vacate. The difficult choice is whether to look for a Motion to Vacate where it comes in more than two weeks after January 21, 2000. Further, the notice directs the police department to locate the original warrant and all copies of the warrant and return those warrants to the Court House and that failure to do this may result in money damages. (Ex. F)

It is obvious that a wrong choice will cause a Fourth Amendment deprivation

**D.** Defendant liaison officers and the municipality are not entitled to qualify immunity as there is no doubt that they acted in an unreasonable manner.

The defendant accurately states the law on qualified immunity. However, she fails to point out <u>Conn. Gen. Stat.</u> §52-557n which abrogates immunity where there are acts of negligence or omissions on the part of the municipality or an employee or where there is an initiation of a judicial proceeding without probable cause. <u>C.G.S. §52-557n (a) and (b) (5).</u> (Ex. Q) The clearly

established constitutional right here is the right to not be seized (arrested) without probable cause. Here there is no question that there is no valid warrant. Further C.G.S. §54-142a directs erasure of the warrant. There is no discretion here either when the warrant came over from the clerk's office or when the plaintiff was arrested. Remember, Meriden found the warrant easily enough when Cheshire called.

**1.** Any objectively reasonable person such as the liaison officers or arresting officer here surrendered their immunity when knowing that the arrest warrant for Failure to Appear had been vacated they: (1) failed to remove the arrest warrant from their records, (2) disseminated the arrest warrant information to other police departments, in particular the Cheshire Police Department, and (3) failed to find the Notice to Vacate after the arrest. They caused the plaintiff to remain in the custody of the Meriden Police Department knowing that the warrant had been vacated.

Aside from the issue of fact that an arrest warrant four months old was given to the liaison officer by the clerk's office. The Notice to Vacate <u>had</u> been given to the liaison officer.

The duty of the liaison officer in the <u>Mervin</u> case involves the liaison officer taking warrant information processed by some other officer from the police department to the State's Attorney office. That liaison officer had no responsibilities for preparing the information that was in the warrant and did not know any of the facts. <u>Mervin v. Jennings</u> 259 F. Sup 2d 180 (D.Conn. 203). Here the liaison officer processes the warrant information to other in the police department, prepares a warrant sheet, processes the Notice to Vacate, looks for the warrant, removes the warrant information from the statewide computer, returns the warrant to the court/State's Attorney office. In the case, it is the liaison officer that has control over the whole situation.

13

(Merrigan depo p. 13, 23, 25, 41, 47, 49, 52).

The plaintiff's Fourth Amendment rights are known by all police officers. The Notice to Vacate reminds the liaison officer and the police department that they better find the warrant and remove it from their records and the statewide computer records. (Ex. F) It is presumptively unreasonable to arrest someone without a warrant. Payton v. New York 445 U.S. 573, 586, 100 S.Ct. 1371, 1380 (1976). A fact finder could easily find that the rights of the plaintiff in this matter are clearly apparent.

Therefore, it is objectively unreasonable for the liaison officers to not have protected the plaintiff from a false arrest.

It is objectively unreasonable for the liaison officers to have allowed other police to have the warrant information.

2. As for the City of Meriden C.G.S. §52-557n also applies to it as well. Furthermore, liability of a municipality "need not be based on an explicitly stated rule or regulation-liability may be premised on municipal inaction or omission." Mervin v. Jennings 259 F. Sup 2d 180, 187 (D. Conn 2003). (Other citations omitted.)

Merrigan has stated that there is no procedure for locating a Notice to Vacate that came in prior to the warrant (Merrigan depo p. 49-50). This is in spite of the fact that the police have one case number (Merrigan depo p. 13).

Merrigan states it is not her responsibility to look for the Notice to Vacate. (Merrigan depo p.13). She states that she has complained and nothing is done. (Merrigan depo p. 23-25, 49-52). The Court House denies there was a problem. (Depo Duggan p. 36-39; 13, 20; Gillis 34-35) So, it was only the police department that feels there was a problem and they did nothing to

14

correct it.

E.    There is no basis for concluding that the Connecticut Supreme Court will require an allegation that the defendant's acts were not willful, wanton or malicious.

Connecticut is a fact pleading state. Practice Book §10-1 states in part: "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies..." To allege that the acts of the defendants were "not willful, wanton or malicious" is conclusionary. A sufficient pleading in Connecticut, would be judged by the factual allegations. The Connecticut Supreme Court would never require such an allegation. Never has any Connecticut Supreme Court case alluded to such a thing. Sestito v. Groton 178 Conn. 520 (1979); Evon v. Andrews 211 Conn. 501 (1989); Gordon v. Bridgeport Housing Authority 208 Conn. 161 (1988).

There is no reason to imply from the facts alleged here that the liaison officer's acts were in any way willful, wanton or malicious. The allegations are clearly: (1) a violation of her Fourth Amendment right, (2) deliberate indifference and (3) negligence.

Connecticut law only states that "Any town, city...shall pay on behalf of any employee...for damages awarded for infringement of any person's civil rights, or for physical damages to person or property...if the employee, at the time of the occurrence...was acting in the performance of his duties and within the scope of his employment and if such occurrence...was not the result of any wilful or wanton act..."

The allegations in Count One, Two or Three establish the employee's liability for violation of the plaintiff's civil rights and liability under a negligence theory. Thus, the City of Meriden's liability is derivative of the employee's liability. Sestito v. Groton 178 Conn. 520, 423 A2d 165 (1979).

15

THE PLAINTIFF

BY_____
Bruce A. Chaplin
208 Main Street
Durham CT 06422
860-349-0528
Fed. Bar ct 05675

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this the ___ day of August 2004 to:

Deborah L. Moore, Esq.
City of Meriden
Department of Law
142 East Main Street
Meriden CT 06450

_____
Bruce A. Chaplin