UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 MAR -7 P 1: 54

U.S. DISTRICT COURT

| | |
|---|---|
| SANDRA SODERLUND,<br>    Plaintiff | )<br>)  CIVIL ACTION NO.<br>)  301CV-1918 (SRU) |
| v. | ) |
| JANICE MERIGAN, JAMES MROCZKA,<br>OFFICERS IN THE POLICE DEPT OF THE<br>CITY OF MERIDEN<br>THE CITY OF MERIDEN,<br>    Defendant(s) | )<br>)<br>)<br>)<br>)  March 3, 2005 |

## NOTICE OF FILING THE ORDERS OF THE COURT

The Plaintiff hereby files a copy of the transcript of Judge Underhill's orders of January 25, 2005.

THE PLAINTIFF

BY _____
Bruce A. Chaplin
208 Main Street
Durham CT 06422
Tele: 860/349-0528
Fed Bar ct05675

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed postage prepaid, on this the 3 day of March 2005 to:

Deborah L. Moore, Esq.
City of Meriden
Department of Law
142 East Main Street
Meriden CT 06450

Frank J. Scardilli, Esq.
Senior Staff Counsel
United States Court of Appeals
Thurgood Marshall US Courthouse
40 Foley Square New York, NY 10007

_____
Bruce A. Chaplin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

SANDRA SODERLUND          :   No. 3:01CV-1918 (SRU)
                          :   915 Lafayette Boulevard
         vs.              :   Bridgeport, Connecticut
                          :
                          :   January 25, 2005
JANICE MERIGAN, ET AL     :

- - - - - - - - - - - - - - - - x


MOTION HEARING


B E F O R E:

   THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:


   FOR THE PLAINTIFF:

      BRUCE A. CHAPLIN, ESQ.
         208 Main Street
         Durham, Connecticut  06422

   FOR THE DEFENDANT:

      DEBORAH LEIGH MOORE, ESQ.
         Corporation Counsel's Office
         142 East Main Street, Rm 240
         Meriden, Connecticut  06450




              Susan E. Catucci, RMR
              Official Court Reporter
              915 Lafayette Boulevard
          Bridgeport, Connecticut  06604
                Tel: (203) 246-6385

1   other cases that I've cited that other police officers
2   will rely upon this information that Janice Merigan
3   allowed to stay out there and be disseminated, in spite of
4   the notices to vacate.
5           And as far as the qualified immunity goes, under
6   the facts of this case it is clearly a question of fact of
7   whether their actions, her actions were reasonable or not
8   in allowing this information to remain out there for other
9   people to rely upon, other police officers to rely upon.
10          THE COURT:  Okay.  Mr. Chaplin, I agree with you
11  concerning the standard that applies here.  That is, under
12  Section 1983 I think the state of mind requirement is
13  established by the underlying substantive offense.  Here
14  we have two; one is the Fourth Amendment claim, the other
15  is the due process claim.  Negligence is not sufficient to
16  support a 1983 claim based upon due process.  It may be
17  sufficient -- I'm not sure I've seen a court case that has
18  held this, but it may be sufficient in the event that the
19  negligent conduct is itself unreasonable.  So I agree with
20  you concerning the standards that govern analysis of these
21  claims.
22          I don't agree with you in terms of their merits
23  or at least in terms of whether there is sufficient
24  evidence to support them to get to a jury.  The Fourth
25  Amendment claim here seems to me fails for a couple of

reasons. There is a facially valid warrant. That, it seems to me, is sufficient to get Mr. Mroczka out of liability. There's no indication that he had -- there's no evidence that he had any actual knowledge that the warrant had been vacated. There's no -- there's really no facts from which knowledge can be imputed to him that the warrant had been vacated. He's called to pick up a person who's been arrested by another authority. He gets that person, serves her with a warrant and I think under very well established case law is entitled to rely upon that facially valid warrant for what he did. So I don't believe that a Fourth Amendment claim could stand against him. Certainly nothing he did shocks my conscience. At best the argument here seems to be that he didn't go back and dig through the file room to find Ms. Soderlund's file to determine whether or not there was a notice to vacate in the file. That seems to be the conduct that is supposedly shocking with respect to him and I just don't find it to be so.

With respect to Ms. Merigan, it's a slightly closer call because of her involvement in the procedures for filing and stamping and, in effect, implementing the notice to vacate. But, again, there seem to be two potential claims against her, neither of which in my view rises to unreasonable conduct on her part. The first is

1   her alleged failure to make sure that the notice to vacate
2   was effectuated and that the warrant was either removed
3   from the file or was taken out of the NCIC system or
4   otherwise notice of its existence was prevented from being
5   disseminated to others.  At best, that is a claim of
6   negligence that she misfiled or failed to file or
7   improperly filed in some way the notice that came over
8   from the court.  That is negligence, pure and simple, and
9   it's basically a clerical error.
10            This case I think then becomes analogous, not
11  bound by, certainly not all on all fours with but
12  analogous to Santa and valid.  This is basically a
13  mistaken arrest case.  It's an unfortunate case.
14  Ms. Soderlund clearly was improperly arrested.  She
15  clearly suffered spending the weekend in jail, but that
16  doesn't end the inquiry.  The inquiry has to include
17  whether or not there is unreasonable conduct in violation
18  of the Fourth Amendment that led to that result and I just
19  don't see it as to Ms. Merigan's supposedly negligent
20  conduct and the way she handled the filing system.
21            The second basis for liability against her is
22  her role when she came in the cell to pat down the
23  plaintiff and, again, for reasons I think we've gone
24  through extensively, there's no evidence from which
25  Officer Merigan could have made the connection that the

1  person she was patting down was someone who had a vacated
2  arrest warrant.  Even if that were the case, there's no
3  evidence that Ms. Merigan had any reason to believe that
4  Ms. Soderlund was, in fact, arrested on the vacated
5  warrant.  For all Ms. Merigan is shown to have known, she
6  could have been picked up for any type of violation
7  observed by an officer on the street.  So there's just a
8  complete lack of connection between what Ms. Merigan knew
9  at the time of the pat down and that, I think, breaks the
10 causal chain and prevents any conduct at that time from
11 being unreasonable within the meaning of the Fourth
12 Amendment.
13         Similarly, either misfiling, negligently
14 misfiling as opposed to intentionally misfiling or
15 maliciously misfiling those records doesn't shock my
16 conscience.  If this had been done in some way because
17 Merigan had a beef against Soderlund and was trying to get
18 back at her in some way, that might in fact be an abuse of
19 position and that might shock the conscience, but here,
20 the only allegations in the evidence to the extent that
21 there is any, suggests it was completely negligent and,
22 accordingly, I'm going to grant summary judgment to both
23 these individual officers on both Counts One and Count
24 Two.
25         That resolves all the federal claims.  And,

1  accordingly, I'm going to dismiss the state law claims
2  without prejudice to renewal in state court.  There are
3  some potential causes of action here under state law and I
4  am not forcing any opinion one way or the other as to
5  whether any of these claims have any merit.
6        I do not intend to write this ruling up and I
7  would be happy to try and explain it, clarify it, expound
8  upon it in any way that either of you think might be
9  useful at this time.
10       MS. MOORE:  Thank you, Your Honor.
11       MR. CHAPLIN:  Well, Your Honor, I would only
12 like to ask you this.  It seems to me, it seems that the
13 case law under Fourth Amendment analysis -- because I
14 would, I would agree that from my analysis of the case,
15 and the fact of the case law and the facts of this case,
16 that the strongest, the two strongest arguments are the
17 two counts that I originally brought, this in and that was
18 Fourth Amendment and the pendent negligence claim.  The
19 other one is a derivative thing under Connecticut statute.
20 So directing my argument to the Fourth Amendment issue
21 here, my reading of the Fourth Amendment cases, the most
22 important issue seems to be whether the actions of the
23 police or the omission, because I think the case law
24 clearly allows omissions as grounds for claiming an
25 unreasonable seizure, it was directed at Sandra Soderlund.

```
 1    It wasn't something that Merigan did to, you know, as part
 2    of her job that inadvertently impacted Sandra Soderlund.
 3    Her actions, and she has to know it would be unreasonable
 4    to say that, that somebody who gets a notice to vacate
 5    doesn't know that this, a failure to remove that will
 6    directly impact the person whose name is on that notice to
 7    vacate.  Now --
 8             THE COURT:  Are you asking me to clarify the
 9    opinion in some way?
10             MR. CHAPLIN:  Yes.
11             THE COURT:  It seems like you're going back to
12    reargue issues that we've already discussed.
13             MR. CHAPLIN:  Well, I guess I'm saying that
14    the -- that misfiling something, even if that were the
15    case, that misfiling something is, how -- it doesn't seem
16    to me that that's any different than pointing a gun at the
17    wrong person.  If you point the gun at the accused person
18    and you inadvertently shoot someone else, then under the
19    case law that's not a Fourth Amendment violation because
20    you were directing your fire to the person who was, who
21    appeared to be committing a crime.  But here you are
22    directing your mistake directly at the person who's, who
23    you know is likely to be arrested and, therefore, it seems
24    that if there is, if there is gray area, there's only gray
25    area because this is such outrageous stupidity on her part
```

that it's unreasonable, and the reason there's never been, maybe never been a case similar to it is it's so unreasonably stupid -- that that's what makes it a Fourth Amendment violation.

THE COURT: All right, well, you're asking me to reconsider and I'm going to decline to reconsider. I don't hear you asking me to clarify anything that I've said; rather, you're rearguing what you've already argued. There's not evidence in the record that the reason this occurred is because Ms. Merigan did something that was stupid or malicious. There's no evidence in the record about why she did it or even if she did it. For all we know, she properly stuck it in the file, the file was then taken down by a clerk who tripped on the way upstairs and that paper landed on the stairs and was discarded. We have no idea. That's the point. We don't know whether what she did was anything unreasonable. You haven't suggested what it is she did. You're assuming what she did and but even your assumptions are merely assumptions of negligence on her part and negligence in this context absent any intent to harm her or malicious conduct or abuse of position, it seems to me, is not something that either is unreasonable within the meaning of the Fourth Amendment or that shocks the conscience within the meaning of substantive due process. And so I'm going to stand by

1  my ruling and wish both of you the best of luck.
2          MR. CHAPLIN:  Your Honor, I would only ask is
3  something in writing going to issue so that I will have an
4  exhibit to attach?  I mean let's assume I'm not going to
5  appeal --
6          THE COURT:  I'm not going to write an opinion.
7  You're free to order the transcript from the court
8  reporter.  Anything further?
9          MS. MOORE:  No, Your Honor.  Thank you.
10         THE COURT:  Thank you, I'll be right back for
11 the next matter.
12         (Whereupon the above matter was adjourned at 11:30
13 o'clock, P. M.)

C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

*[signature]*

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (203) 246-6385